suant to an order that directed the defendant to show cause why the issues raised in his appeal should not be summarily decided. The defendant, Patrick Gilroy, appeals from a determination by a Superior Court judge that the defendant had violated the terms of his probation after he was presented as a violator of two previously imposed sentences. The Court vacated the suspension on both sentences and ordered the defendant to serve a five-year term and a 57–month term to run concurrently.

After reviewing the memoranda submitted by the parties and after hearing the arguments of counsel, this Court concludes that cause has not been shown and the appeal will be decided at this time.

The state charged defendant with assault with a dangerous weapon, to wit, his shoes, following defendant's involvement in a street-fight that occurred in the early morning hours of February 21, 1996. On May 14, 1996, following a three-day trial, the trial justice entered an adjudication of violation against defendant, who timely appealed.

The victim, Daniel DeCelles (DeCelles), testified that on February 21, 1996, he and four others were leaving the Keg Room, a bar in downtown Providence, Rhode Island. One of the men in the group shouted at another group of four or five men. Subsequently, a fight ensued. DeCelles testified that he remembered waking up lying on the ground bleeding. A friend of DeCelles, Santo Iaconetti (Iaconetti), was with DeCelles that evening and testified that while DeCelles was lying unconscious on the ground, defendant kicked DeCelles in the head and walked away only after Iaconetti threw himself on top of DeCelles's body. Iaconetti further testified that he heard a bouncer say "Pat, you better get out of here, it doesn't look good." Two days after the incident, Iaconetti identified defendant from a series of photographs. The defendant and two others in his group denied seeing anyone lying on the ground or defendant kicking anyone. It was undisputed that DeCelles incurred serious facial injuries as a result of the incident.

On appeal defendant contended that Iaconetti's identification was erroneous and that the other members of DeCelles's group who did not testify would not have identified defendant as the person who injured DeCelles.

The state need only establish a violation of probation by reasonably satisfactory evidence. *State v. Olsen,* 610 A.2d 1099, 1103 (R.I.1992). Moreover, in reviewing a finding of violation of probation, this Court's review is "limited to a consideration of whether the trial justice acted arbitrarily or capriciously in finding a violation." *Olsen,* 610 A.2d 1099, 1103 (citing *State v. Bourdeau,* 448 A.2d 1247, 1249 (R.I.1982)). The trial justice specifically found the testimony of Iaconetti and DeCelles to be credible but rejected the testimony of other witnesses. The trial justice also found that Iaconetti had a good opportunity to see defendant and that the set of photographs from which Iaconetti identified defendant was not suggestive. Under these circumstances, the trial justice did not act arbitrarily or capriciously in determining that defendant had violated his probation.

Consequently, we deny and dismiss the appeal and affirm the judgment of the Superior Court, to which the papers in the case may be returned.

## In re TONI C. et al.

### No. 96–342–Appeal.

Supreme Court of Rhode Island.

Jan. 31, 1997.

Frank P. Iacono, Jr., E. Greenwich, Anthony E. Angeli, Jr., Providence.

Paula Lynch Hardiman, Paula Rosin, Providence.

### ORDER

This case came before the Supreme Court for oral argument on January 22, 1997, pursuant to an order that directed all parties to

show cause why the issues raised in this appeal should not be summarily decided. The respondent, Iris Cruickshank, appeals from a Family Court finding of abuse and neglect as to her daughter, Toni C. and a finding of neglect as to her two other children, Amanda N. and Megan.

After reviewing the memoranda submitted by the parties and after hearing the arguments of counsel and of Toni's biological father, Anthony Prete (Prete), this Court concludes that cause has not been shown and the appeal will be decided at this time.

On July 31, 1991, the Department of Children, Youth and Families (DCYF) filed a petition alleging that Toni was neglected by respondent. The petition was based on the fact that Toni almost drowned in a bathtub while respondent's boyfriend, Christopher Nantais (Nantais) was babysitting. On December 20, 1991, respondent admitted to dependency, and Toni was committed to the custody and control of DCYF. Subsequently, Toni was returned to respondent's custody on the condition that respondent was restrained and enjoined from allowing the child to be in the presence of Nantais. On October 7, 1992, as a result of Toni's disclosure to DCYF that Nantais babysat for her and her sister, Amanda, despite the restraining order against such contact, DCYF filed a neglect petition regarding Amanda and filed a new neglect petition regarding Toni. Subsequently, while both children were placed in foster care, Toni disclosed that Nantais had sexually abused her and that he had attempted to drown her. On September 30, 1993, DCYF filed a neglect petition regarding defendant's newborn child, Megan, who was subsequently also placed in foster care. Both Amanda and Megan are Nantais's biological children. A trial on all three neglect petitions in respect to respondent and Prete was commenced on November 15, 1994 and concluded on June 6, 1995.

Several witnesses testified at trial that Nantais visited and stayed overnight at respondent's home in spite of the restraining order. In addition, a DCYF child protective investigator testified that she had discovered bruises on Toni's thigh and back and that she had received information that Toni had been sexually abused by Nantais. A DCYF social worker also testified that Toni had disclosed that Nantais had attempted to drown her and that he had sexually abused her. A DCYF social worker, assigned to this case in January of 1993, testified that respondent continually expressed disbelief that Nantais had either attempted to drown or had sexually abused Toni. A medical doctor testified that Toni had been held down in the bathtub and that she suspected that Toni had been sexually abused. The trial court also admitted into evidence a record that Nantais had entered a plea of nolo contendere to assault with intent to murder Toni.

Our review of the record discloses ample evidence to support the trial justice's finding of abuse. The evidence included the fact that respondent violated a no contact order with Nantais. In addition, subsequent to the physical and sexual abuse of Toni by Nantais and subsequent to the no contact order, Nantais fathered two children with respondent. This contact continued to subject the children to the risk of harm. Moreover, there was evidence that respondent denied the abuse by Nantais and therefore did not have the ability to protect her children from harm. This Court has stated that the state need not wait until a child is actually harmed before it acts. *In re Lester*, 417 A.2d 877, 881 (R.I. 1980). Consequently, the record amply supports the trial justice's findings that Toni was abused and that all three children were neglected.

This Court has held that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or unless the trial justice misconceived or overlooked material evidence. *In re Lee*, 442 A.2d 893, 897 (R.I.1982). On the basis of our review of the record, the trial justice's findings are not clearly wrong, nor did she overlook or misconceive the evidence.

Consequently, we deny and dismiss the appeal and affirm the order of the Family Court, to which the papers in the case may be returned.